IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

VANESSA M. B.,

                    Plaintiff,

         v.                                    Civil Action No.
                                               5:22-CV-0202 (DEP)


KILOLO KIJAKAZI,
Acting Commissioner of Social Security

                    Defendant.

─────────────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                      JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              FERGUS J. KAISER, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

─────────────────────

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in June of 1969, and is currently fifty-three years of age.  She was fifty years old as of April 23, 2020, the date upon which she filed her application for benefits.  Plaintiff stands five feet and five inches in height, and weighed approximately two hundred and fifty-four pounds during the relevant time period.  At the time of the administrative hearing in this matter, plaintiff reported that she was living in an apartment with her companion in Syracuse, New York.

In terms of education, plaintiff reports that she attended school until the eleventh grade, but did not graduate and has not obtained a GED.  She worked in the past most relevantly as a cashier and prep cook at various fast food restaurants.

2

Physically, plaintiff alleges that she suffers from pain in her back and legs, neuropathy in her legs, migraine headaches, and fatigue with overexertion related to her heart.  She has received treatment for her various physical impairments with the Joslin Diabetes Center at Upstate University Hospital, Dr. Sarah Lappin and other providers at Upstate Bone and Joint Wellness Center, the Syracuse Community Health Center, and cardiologist Dr. Timothy Ford.  Plaintiff additionally alleges that she suffers from depression and anxiety, for which she has received treatment from Helio Health and CIRCARE.

Plaintiff alleged at the administrative hearing related to her application for benefits that she has difficulty standing and walking due to back pain and diabetic neuropathy in her legs.  Sitting for long periods of time also makes her body stiff, resulting in a need to change positions often.  Plaintiff reported that she can lift five pounds comfortably and cannot do housework, cooking, or shower unless she is seated.  Her companion does all of the chores in their apartment.  Plaintiff also testified that she experiences migraine headaches two or three times per month, each lasting for approximately a day.  The medications she takes sometimes cause drowsiness and make her sleep, particularly one of the medications she is prescribed for her diabetes.

3

II.   PROCEDURAL HISTORY

   A.   Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social

Security Act on April 23, 2020.  In support of her application, she claimed to

be disabled due to a lower back injury, migraines, type II diabetes, arthritis

in her hands, back and left knee, diabetic neuropathy in her lower

extremities, anxiety, and depression.

A hearing was conducted on March 5, 2021, by Administrative Law

Judge ("ALJ") Jeremy G. Eldred to address plaintiff's application for

benefits.  On April 1, 2021, ALJ Eldred issued an unfavorable decision,

finding that plaintiff was not disabled at the relevant times, and thus

ineligible for the SSI benefits sought.  That opinion became a final

determination of the agency on January 11, 2022, when the Social Security

Appeals Council ("Appeals Council") denied plaintiff's request for review of

the ALJ's decision.

   B.   The ALJ's Decision

In his decision, ALJ Eldred applied the familiar, five-step sequential

test for determining disability.  At step one, he found that plaintiff has not

engaged in substantial gainful activity since the date of her application.

Proceeding to step two, ALJ Eldred found that plaintiff suffers from severe

impairments that impose more than minimal limitations on her ability to perform basic work functions, including degenerative changes of the lumbar spine, asthma, chronic obstructive pulmonary disease ("COPD"), heart disease status post myocardial infarction, type II diabetes, diabetic neuropathy, obesity, an anxiety disorder, and a depressive disorder.  He further found that plaintiff's diabetic retinopathy does not constitute a severe impairment, and that her migraine headaches have not been established as a medically determinable severe impairment.

At step three, ALJ Eldred examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.00, 3.02, 3.03, 4.04, 9.00, 11.14, 12.04, 12.06, as well as Social Security Ruling ("SSR") 19-2p, related to obesity.

ALJ Eldred next surveyed the available record evidence and concluded that, during the relevant time period, plaintiff retained the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with the following additional restrictions:

> she can climb, stoop, kneel, crouch, or crawl no more
> than occasionally, must avoid exposure to
> concentrated dust, odors, fumes, or gases, can
> understand, remember, and carry out only simple
> and routine tasks, can concentrate, persist, and
> maintain pace in a work setting to the extent
> necessary to perform only simple and routine tasks,
> can interact no more than occasionally with
> supervisors, co-workers, or the public, and can
> appropriately adapt to ordinary changes in an
> unskilled occupation that involves only simple and
> routine tasks.

ALJ Eldred found at step four that, with the above RFC, plaintiff is unable to perform any of her past relevant work.  Proceeding to step five, the ALJ elicited the testimony of a vocational expert ("VE") regarding how plaintiff's limitations would impact her ability to perform other available work in the national economy and concluded, in light of the VE's testimony, that plaintiff remains able to perform such work, citing as representative positions those of merchandise marker, routing clerk, and labeler.  Based upon these findings, ALJ Eldred concluded that plaintiff was not disabled during the relevant period.

C.   This Action

Plaintiff commenced this action on March 3, 2022.[2]  In support of her

---

[2]   This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

challenge to the ALJ's determination, plaintiff argues that the ALJ (1) erred in his reliance on the opinions of the various state agency medical consultants and consultative examiner Dr. Elke Lorensen when formulating the physical portion of his RFC finding because (a) the ALJ failed to address the fact that Dr. Lorensen's opinion concerning various moderate limitations is inconsistent with the ALJ's finding of light work, and (b) the ALJ failed to appropriately explain how he afforded the same amount of persuasiveness to all of these opinions despite the fact they express differing levels of limitation; (2) the ALJ failed to appropriately assess the opinions from treating physicians Dr. Sarah Lappin and Dr. Timothy Ford and failed to recontact those sources for more significant explanation or clarification; and (3) the ALJ erred in his assessment of plaintiff's mental limitations by (a) failing to explain affording the same amount of persuasiveness to various opinions despite the fact those opinions express differing levels of limitation, and (b) failing to account for limitations within the opinions found to be persuasive, specifically moderate limitations in maintaining a regular schedule and concentration, persistence and pace, and in adapting and managing herself.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on June 6, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

      The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149

(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   <u>Analysis</u>

Plaintiff's arguments all center in some way around the ALJ's assessment or treatment of the various opinion evidence present in the administrative record.  Dkt. No. 12.  Because plaintiff's application was filed

11

after March 27, 2017, this case is subject to the amended regulations

regarding opinion evidence. Under those regulations, the Commissioner

"will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s), . . . including those from your medical

sources," but rather will consider whether those opinions are persuasive by

primarily considering whether the opinions are supported by and consistent

with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg.

5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new

regulations, the agency was explicitly "not retaining the treating source

rule").  An ALJ must articulate in his or her determination as to how

persuasive he or she finds all of the medical opinions and explain how he

or she considered the supportability[3] and consistency[4] of those opinions.

20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to –

explain how he or she considered the other relevant enumerated factors

---

[3]      On the matter of supportability, the regulations state that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source
are to support his or her medical opinion(s) or prior administrative medical finding(s), the
more persuasive the medical opinion or prior administrative medical findings(s) will be."
20 C.F.R. § 416.920c(c)(1).

[4]      On the matter of consistency, the regulations state that "[t]he more consistent a
medical opinion(s) or prior administrative medical finding(s) is with the evidence from
other medical sources and nonmedical sources in the claim, the more persuasive the
medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §
416.920c(c)(2).

related to the source's relationship with the claimant, including the length of

any treatment relationship, the frequency of examinations by the source

and the purpose and extent of the treatment relationship, whether the

source had an examining relationship with the claimant, whether the source

specializes in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

           1.    <u>Dr. Lorensen's Opinion</u>

Plaintiff argues that the ALJ erred in purporting to find the opinion of

Dr. Lorensen to be persuasive because Dr. Lorensen's assessment of

moderate limitations in the abilities to engage in prolonged standing and

ambulation, bending and lifting is inconsistent with light work.  Dkt. No. 12,

at 16-17.  Contrary to plaintiff's argument, however, this court and others

within this circuit have frequently found that such moderate limitations are

generally consistent with a finding of the ability to perform light work.  *See*

*Shari L. v. Kijakazi*, 20-CV-1266, 2022 WL 561563, at *8 (N.D.N.Y. Feb.

24, 2022) (Baxter, M.J.) (rejecting a similar contention and finding that an

opinion that claimant has moderate limitations in the abilities to walk, sit, or

stand for prolonged periods is not inconsistent with an RFC for light work) ;

*see also Rayshown M. v. Comm'r of Soc. Sec.*, 20-CV-7001, 2022 WL

4298263, at *4 (W.D.N.Y. Sept. 19, 2022) ("Courts in this Circuit have

repeatedly upheld an ALJ's decisions that a claimant could perform light work when there was evidence that the claimant had moderate difficulties in prolonged standing, walking, sitting, bending, or lifting.") (collecting cases); *George A. v. Comm'r of Soc. Sec.*, 20-CV-0691, 2021 WL 2102527, at *8 (W.D.N.Y. May 25, 2021) (finding that plaintiff had not established that moderate limitations in prolonged sitting, standing and walking would preclude the performance of light work).  To the extent that plaintiff cites more remote cases from these same districts in support of her argument, I find those cases to be less persuasive than the various courts' more recent assessment of this issue.

Because plaintiff has not presented any evidence that would convince me that the ALJ's interpretation of Dr. Lorensen's opinion as being consistent with the performance of light work was unreasonable, I find no inconsistency between the RFC finding and the ALJ's finding that this opinion was persuasive.

2.    Physical Functioning Opinions the ALJ Found to Be Persuasive

Plaintiff additionally argues that the ALJ erred in finding that the opinion of Dr. Lorensen and the administrative findings of two state agency medical consultants, Dr. K. Waldman and Dr. I. Seok, were all equally persuasive despite the fact that those opinions express somewhat differing

14

levels of limitation.  Dkt. No. 12, at 11-15.

The relevant regulations state that, when the ALJ finds that two or more medical opinions or prior administrative findings regarding the same issue are equally well supported and consistent with the record but are not exactly the same, he or she "will articulate how [he or she] considered the other most persuasive factors" related to those opinions and prior administrative medical findings.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).  Those factors include the source's relationship with the claimant, his or her specialization, and other factors that would "tend to support or contradict a medical opinion or prior administrative finding," including familiarity with the agency's disability program's policies and evidentiary requirements, familiarity with the evidence in the claim, and whether new evidence received after the source rendered the opinion or prior administrative medical finding at issue would make such opinion or prior administrative medical finding more or less persuasive.  20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

As was touched upon above, Dr. Lorensen opined on September 3, 2020, that plaintiff has no gross limitations in her abilities to sit or handle small objects with her hands, but is moderately limited in the areas of prolonged standing and ambulating, bending, lifting, carrying, climbing

15

kneeling and squatting, and should avoid known respiratory irritants.  AT

698.  On September 11, 2020, Dr. Waldman opined that plaintiff can lift and

carry 20 pounds occasionally and ten pounds frequently, stand or walk for

six hours in an eight-hour workday with normal breaks, sit for six hours in

an eight-hour workday with normal breaks, occasionally climb, stoop, kneel,

crouch and crawl, and avoid concentrated exposure to pulmonary irritants.

AT 110-12.  Dr. Seok affirmed this opinion on November 5, 2020. AT 129-

32.

It is not clear in what respects plaintiff argues these opinions

materially differ, other than the argument that Dr. Lorensen's opinion is not

consistent with a finding of light work – which I have already found to be

unpersuasive.  Indeed, having found that moderate restrictions are

generally consistent with an ability to perform light work, these opinions are

essentially expressing all the same limitations. To the extent that they differ

in some slight respects, plaintiff offers no argument as to how consideration

of the other relevant factors would have altered the outcome here.  Indeed,

plaintiff's argument on this point, while ostensibly based in the alleged legal

error of failing to consider the other relevant factors as a result of these

three opinions not being identical, revolves around her belief that the ALJ

inappropriately found these opinions to be consistent with evidence.

However, although plaintiff would like the evidence in this case weighed in a different manner, my review of the evidence did not reveal findings that would render the ALJ's consistency finding as to these opinions to be unsupported by substantial evidence.

Although the ALJ's discussion of the evidence and explanation regarding consistency is admittedly sparse, that fact does not preclude meaningful judicial review.  Evidence from 2019, which is prior to the alleged onset date of disability, shows that plaintiff reported some temporary relief of her back pain with trigger point injections, and that she displayed some limited range of motion, tenderness in her paraspinal muscles, and pain with straight leg raising on examination.  *See e.g.*, AT 459, 471, 522.  Similar findings were noted on an examination in July of 2020, with additional other positive positional tests showing pain, and she was referred for a right sacroiliac joint injection.  AT 818-19.  It was noted the following month by her primary care provider that a sacroiliac joint injection was the only current planned treatment for her back pain.  AT 895. She underwent that injection in September of 2020.  AT 834.  Plaintiff continued to report restrictions due to her back pain to her cardiologist in December of 2020, but did not receive further pain management treatment through the remainder of the documented period, and it was noted by her

17

cardiologist that she reported that not being active was "by choice" and she was able to carry out all of her activities of daily living without restriction. AT 985-86.  Updated magnetic resonance imaging ("MRI") of her lumbar spine from November of 2020 showed mild narrowing of the central canal from the L4 to S1 level, crowding of the cauda equina nerve roots, and mild disc bulges and narrowing of the bilateral neurofomina at the L4-L5 and L5-S1 levels, with possible narrowing of the bilateral lateral recesses of L5 and S1.  AT 844.  Although the objective medical evidence therefore shows the existence of some symptoms and restrictions related to plaintiff's spinal impairment in particular, I do not find the ALJ's conclusion that such evidence can be considered to be consistent with the opinions for an ability to perform light work to be unreasonable.

As to the factor of supportability, Dr. Lorensen's examination revealed plaintiff was in no acute distress with a normal and even gait, although she was unable to walk on her heels and toes, had a thirty-percent squat capability, and needed help getting off the examination table. AT 697.  She was observed to have decreased range of motion in her lumbar spine, but intact sensation and strength in both her upper and lower extremities.  AT 698.  The state agency medical consultants provided a detailed recitation of the evidence they relied upon when rendering their

prior administrative findings.  AT 112, 131.  The ALJ specifically found that

these opinions were all supported by their respective examination or review

of the record, and I see no error in that finding.

For all of the above reasons, I find that the ALJ's assessment of the

opinions of Dr. Lorensen and the state agency medical consultants is

consistent with the applicable legal standards and supported by substantial

evidence, and that plaintiff's argument is essence represents an improper

request for the court to reweigh the available opinion evidence.

### 3.   Dr. Lappin's Opinion

Plaintiff argues that the ALJ erred in his assessment of Dr. Lappin's

opinion by improperly rejecting it based on the fact it was presented prior to

the alleged onset date of disability, that no rationale was provided to

support the limitations indicated on the check-box form, and that it was

inconsistent with the opinions of Dr. Lorensen and the state agency

medical consultants and with plaintiff's ability to perform routine activities of

daily living.  Dkt. No. 12, at 18-22.

In a form dated May 23, 2019, Dr. Lappin opined that plaintiff is

moderately limited in her abilities to walk, lift, carry, push, pull, bend, and

use stairs or otherwise climb, with no limitations in her abilities to stand, sit,

see, hear, and speak, and in various aspects of mental functioning.  AT

854.[5]  Dr. Lappin further opined that plaintiff is able to work full-time, although she has difficulty bending and lifting such that she should not lift more than ten pounds, and would require the ability to change positions between sitting and standing.  AT 855.

The opinion of Dr. Lappin, which was included in a grouped discussion of several opinion forms provided by various sources to the New York State Department of Social Services, was found to be unpersuasive because it was issued well before the amended alleged onset of disability of April 23, 2020, she did not provide any "significant, objectively-based rationale to support [her] 'check block' opinion," and her opinion lacks specificity and is inconsistent with the opinions of Dr. Lorensen, the state agency medical consultants, and the evidence the ALJ discussed about plaintiff's ability to perform routine activities of daily living.  AT 18.

Although plaintiff is correct that the fact that an opinion is rendered prior to the alleged onset date or date upon which the claimant filed his or her application for disability benefits does not automatically constitute grounds for dismissing that opinion, I note that it is one aspect that an ALJ

---

[5]     I note that, due to the reproduction quality of the form, it is difficult to ascertain what categories of severity are listed on that form. However, it appears that the relevant levels of severity noted are "slight or no limitation," "moderately limited," and "severely limited."

20

may consider.  Moreover, I note, as the Commissioner points out, it does not appear that Dr. Lappin has treated the plaintiff at any time more recent than when she provided her opinion, and there is therefore no indication that Dr. Lappin's opinion would have remained the same approximately a year later.

Further, although it is true that an ALJ is not permitted to reject a physician's opinion based solely on the fact that it was rendered on a check-box form, that is not what the ALJ did in this instance. Rather, the ALJ relied on the fact that the sources authoring those opinions did not provide any rationale to support the limitations they indicated on those forms, that the opinions lack specificity, and that they are inconsistent with the opinions of Dr. Lorensen, Dr. Waldman, Dr. Seok, and with evidence related to plaintiff's ability to perform routine activities of daily living.  AT 17- 18; *see Schillo v. Kijakazi*, 31 F.4th 64, 77 (2d Cir. 2022) (noting that, although an ALJ cannot discount a treating physician's opinion "based on the naked fact that it was provided in a check-box form," he or she may discount a treating physician's opinion if it is not supported by substantial evidence in the record).  The ALJ also was not under any duty to recontact Dr. Lappin for an updated opinion or clarification to the extent her opinion was vague or ill-defined.  *See Schillo*, 31 F.4th at 76 (noting no gap existed

to fill in the administrative record where the ALJ rejected the physician's opinion based on its use of "vague, undefined terms" because "a deficiency in reasoning by a treating physician is not the same as a gap in treatment records," and the record before the ALJ was otherwise complete).

Plaintiff does not appear to dispute that Dr. Lappin has not provided any explanation for the limitations she opined within the opinion form itself. Nor does she indicate how Dr. Lappin's own treatment notes supply such explanation.  Further, even if there might be some support in Dr. Lappin's treatment notes, the ALJ explicitly found that the opinion is nevertheless inconsistent with the other, more timely opinions included in the record, and with Dr. Ford's notation on multiple occasions that plaintiff has no difficulty with her routine activities of daily living.  As was discussed above, the medical evidence in the record, while showing some limitations, does not so clearly suggest any of the greater limitations included in Dr. Lappin's opinion that it can be concluded that the ALJ's assessment was unreasonable.

4.    <u>Dr. Ford's Opinion</u>

Plaintiff also argues, to a lesser extent, that the ALJ erred in his assessment of the opinion from treating cardiologist Dr. Ford.  However, plaintiff has not provided any specific reasons as to why she believes the

ALJ's assessment of that opinion was inadequate.  Plaintiff points only to the fact that the ALJ highlighted that Dr. Ford's opinion was based solely on her cardiac condition and not on her back pain or other impairments, and that Dr. Ford failed to cite any evidence that would support such limitations as a result of her cardiac impairment.  Dkt. No. 12, at 19.

However, there was nothing inaccurate about the ALJ's finding.  In the form, Dr. Ford's opinion stated that the relevant diagnoses related to his opinion are coronary artery disease with a prior myocardial infarction; he did not mention that her lumbar spine condition or other relevant impairments were considered.  AT 958.  I agree with the ALJ that there is little to no evidence to support Dr. Ford's assessment of significant physical limitations related to plaintiff's cardiac impairment.  In the opinion form, Dr. Ford himself provided statements that appear to contradict his functional assessment, including that plaintiff has recovered her heart function after her 2017 heart attack, she has no chest pain, that her heart would not prevent many of the activities listed on the form, and that she has no cardiac symptoms.  AT 958-60.  Further, as the ALJ noted in the decision, Dr. Ford recorded in his treatment records from the relevant period that plaintiff was not very active "by choice," that she was able to do all of her activities of daily living without restriction, and that she was doing well from

a cardiac standpoint.  AT 16-17-18, 970, 985-86.

Because the ALJ considered the relevant factors of supportability and consistency and his conclusions with respect to those are supported by substantial evidence, I find no error in the ALJ's assessment of Dr. Ford's opinion.

### 5.   The ALJ's Mental RFC Finding

 Plaintiff lastly argues that the ALJ erred when assessing the mental opinion evidence and formulating the RFC finding regarding her mental limitations.  Dkt. No. 12, at 22-25.

As to the opinion evidence, plaintiff again argues that the ALJ erred in failing to discuss all of the relevant factors listed in 20 C.F.R. §§ 404.1520c and 416.920c, based on the fact that one of the three opinions that the ALJ found to be persuasive expressed a different level of limitation than the other two.  *Id.* at 22.  On September 3, 2020, Dr. Grassl opined that there was no evidence of limitation in plaintiff's ability to understand, remember and apply simple directions and instructions, use reason and judgment to make work-related decisions, interact adequately with others, maintain personal hygiene and appropriate attire, or be aware of hazards and take normal precautions, although she is moderately limited in her abilities to understand, remember and carry out complex directions and instructions,

24

sustain concentration and perform tasks at a consistent pace, sustain an

ordinary routine and regular attendance at work, and regulate emotions,

control behavior, and maintain well-being.  AT 692.  By contrast, on

September 11, 2020, Dr. Y. Sherer opined that plaintiff can understand and

remember moderately detailed instructions, maintain attention adequately

to complete ordinary work tasks on an ongoing basis and sustain a routine,

maintain appropriate social interaction with others in a work setting, and

retains the capacity to deal with basic changes in an ordinary routine work

setting despite some acknowledged difficulty coping with demands,

adapting to changes, and regulating emotions and behavior.  AT 114-15.

Dr. M. Momot-Baker affirmed this assessment on November 4, 2020.  AT

134-36.

Again, as with the physical functioning opinions, the opinion of Dr.

Grassl is not significantly different from the prior administrative findings of

the state agency sources, and plaintiff does not argue how a consideration

of the additional factors listed in the regulations would have altered the

ALJ's finding in any way.  Moreover, as with the physical assessments, Dr.

Grassl's finding of "moderate" limitations does not suggest that the ALJ

failed to account for limitations he was purporting to adopt. *See  Shawn C.

v. Comm'r of Soc. Sec.*, 20-CV-1378, 2022 WL 17037624, at *4 (W.D.N.Y.

Nov. 17, 2022) (finding no error in ALJ's RFC finding for simple, unskilled work in a restricted setting where the medical sources opined slight to moderate limitations in remembering and carrying out simple instructions, maintaining attention and concentration for extended periods, working near others without being distracted, making simple work-related decisions, accepting criticism, getting along with others, and adapting to changes in work setting) (citing *McIntyre v. Colvin*, 785 F.3d 146, 152 (2d Cir. 2014); *Zabala v. Astrue*, 595 F.3d 402, 407-11 (2d Cir. 2010)).

Further, regarding plaintiff's argument that the ALJ failed to account for limitations related to maintaining a schedule and concentration, persistence or pace, and regarding adapting and managing oneself, particularly regulating emotion, controlling behavior and maintaining well-being, I find those arguments to be unconvincing.

As to Dr. Grassl's opined moderate limitation in sustaining concentration or performing tasks at a consistent pace, the ALJ appears to have adequately considered and accounted for such limitation by including in the RFC a specification that not only can she understand, remember and carry out only simple and routine tasks, but that she "can concentrate, persist and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks."  AT 15.  Further, the ALJ also relied

on the state agency physician's finding that plaintiff is able to maintain adequate attention to complete ordinary work tasks on an ongoing basis and sustain a routine.  AT 114, 135.  These facts show that the ALJ did not fail to consider plaintiff's abilities to sustain concentration and pace, and plaintiff fails to point to any evidence which would suggest that the ALJ should have more appropriately interpreted Dr. Grassl's moderate limitation as requiring some additional restriction in this area.  I note also, as the ALJ did, that Dr. Grassl's own examination showed that plaintiff's attention and concentration were only mildly impaired on testing.  AT 691.  Dr. Grassl reported that such impairment was due to a learning disability related to mathematics skills, not necessarily due to her alleged mental impairments of depression or anxiety.  *Id.*  Nor do the treatment records from plaintiff's therapist substantiate any greater specific limitations in her ability to concentrate or maintain pace.

As to Dr. Grassl's moderate limitation for regulating emotion, controlling behavior and maintaining well-being, I note that, when finding plaintiff could adapt to changes in a work setting, the state agency sources explicitly stated that plaintiff retained that ability despite issues with regulating emotion and controlling behavior. Accordingly, to the extent the ALJ did not include greater limitations in the RFC related to that specific

limitation, there was substantial evidence to support that finding.

Based on the foregoing, I find that the ALJ's assessment of the evidence related to plaintiff's mental functioning is consistent with the applicable legal standards and supported by substantial evidence.

IV.    SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 14) is GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is DENIED, the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:    June 15, 2023
          Syracuse, NY                      DAVID E. PEEBLES
                                            U.S. Magistrate Judge